UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ASHISH UDANI and RUPA UDANI,

      Plaintiffs,

      v.                                        Case No. 05-C-0360

BENNY'S MOVING & STORAGE, INC.
and HANOVER INSURANCE COMPANY,

      Defendants.

---

### DECISION AND ORDER RE: PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND FOR ENTRY OF JUDGMENT

---

      On February 25, 2005, the plaintiffs, Asish and Rupa Udani ("the Udanis"), filed a complaint in the Waukesha County Circuit Court against three defendants, to wit, Benny's Moving & Storage, Inc. ("Benny's"), Arbella Protection Insurance Company ("Arbella"), and Hanover Insurance Company ("Hanover"). At its factual core, the Udanis' complaint is that in July of 2004 Benny's transported the Udanis' family's household possessions from Acton, Massachusetts to Brookfield, Wisconsin. Unfortunately, the condition of the possessions at the time they were ultimately delivered to the Udanis in Wisconsin was not the same as it was when they were turned over to Benny's in Massachusetts.

> Upon delivery, the Udanis discovered that many of their family household furnishings had been damaged in transit. Wooden furniture was variously chipped, broken, scratched, wet, and moldy. The finishes of lacquer furniture were peeled or broken away, and were wet and moldy. The Udanis also discovered that: boxes containing personal items and garments were damaged, wet, moist, and moldy; several mattresses were wet, moldy, and stained with rust; and, garments specially designed and made in India for Rupa Udani had been stained, soiled, and otherwise damaged. The Udanis also discovered a dead rodent at the bottom of one of the garment boxes.

(Compl. ¶ 15.) On March 29, 2005, the complaint was removed to this court pursuant to 28 U.S.C. §§1331, 1337(a) and 1441, because "the Carmack Amendment to the ICC Termination Act of 1995 ("ICCTA"), 49 U.S.C. § 14706, governs Plaintiffs' claims for loss of or damage to the subject shipment." (Notice of Removal ¶ 4.) Defendants Benny's and Hanover answered the complaint, the plaintiffs voluntarily dismissed their complaint against defendant Arbella, and soon thereafter the parties commenced together their journey down the long and winding litigation road in this action, leading ultimately to the plaintiffs' instant motion for summary judgment as to reasonable attorneys' fees.

No formal discovery was ever taken in this case. More particularly, no interrogatories, requests for production of documents or requests for admissions were served by any of the parties, and no depositions were taken. Ultimately, the parties stipulated that "the amount of actual damages to which Plaintiffs are entitled from Benny's on the claims alleged in their First Amended Complaint are $6,500.00, exclusive of any reasonable attorneys' fees to which Plaintiffs may be entitled from Benny's under 49 U.S.C. § 1478(d), to be determined by the Court." (Parties' Stip. as to Damages) The plaintiffs now claim that from August 19, 2004 (which was well prior to the filing of the complaint) to March 3, 2006 (which was shortly before the instant motion was filed), the Udanis incurred attorneys fees totaling $24,307.00 and costs totaling $829.41.[1] The defendants assert that such amount is unreasonable. Indeed, the defendants maintain that the most they should be ordered to pay in attorneys' fees is $10, 301.00.

---

[1] Indeed, in the June 13, 2006 affidavit of Ashish Udani, which affidavit was filed with the plaintiffs' reply brief, Mr. Udani avers that "[a]s of today's date, I have paid a total of $30,267.50 in attorneys' fees, including all of the fees submitted in connection with Plaintiffs' Motion for Summary Judgment as to Reasonable Attorneys' Fees." (Aff, at ¶ 4.)

In support of their motion the plaintiffs filed a fourteen page brief, a set of proposed findings of fact and conclusions of law, and affidavits signed by Asish Udani, by Attorney Benjamin C. Grawe (with attached billing invoices, letters, faxes and a complaint filed with the Better Business Bureau), by Attorney Douglas P. Dehler, and by Attorney David V. Meany. The defendants responded by filing their own twenty-one page memorandum, a set of proposed findings of fact and conclusions of law, and affidavits (to which various documents were attached) signed by David Abotbool, by Attorney Wesley S. Chused, and by Attorney Tomislav Z. Kuzmanovic. Finally, the plaintiffs filed a nine page reply brief, and affidavits signed by Ashish Udani and Attorney Benjamin Grawe.

According to the plaintiffs,

> [C]ounsel for Plaintiffs have spent 151.85 hours on this case. Of these hours, 104.60 were spent by an associates [sic] at the hourly rate of $185; 16 hours were spent by a partner at the hourly rate of $237.50; and 27.5 hours were spent by law clerks or other support staff at hourly rates ranging from $57.51 to $100.00. This amount also takes into consideration counsel's reduction of fees by $2,094 for time spent by a law clerk and junior associate.

(Pls.' Br. at 8.)

The defendants do not dispute that the plaintiffs are entitled to reasonable attorneys' fees pursuant to 49 U.S.C. § 14708(d). They likewise do not contend that the plaintiffs' attorneys' hourly billing rates are unreasonable. (Defs.' Br. at 13 n.6, 17.) Their only dispute is over the amount of time that was reasonably expended by the plaintiffs' attorneys in prosecuting the Udanis' claim.

The starting point in the court's analysis of reasonable attorneys' fees in a case such as this involving the Carmack Amendment, 49 U.S.C. § 14708(d) is the lodestar amount – a calculation that multiplies the number of hours reasonably expended on the case by the appropriate hourly rate for

3

counsel. This figure then becomes the presumptive fee to be awarded. *Rini v. United Van Lines, Inc.*, 903 F. Supp. 234, 237 (D. Mass. 1995). After determining the lodestar, the court may discount the total fee based on various factors, including (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee for similar work, (6) whether the fee is fixed or contingent, (7) the time limitations imposed by the client or the circumstances, (8) the amount in controversy and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesireability of the case, (11) the nature and length of the professional relationship with the client, and (12) attorneys' fees awards in similar cases. *See Bankston v. State of Illinois*, 60 F.3d 1249, 1255 (7th Cir. 1995); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

To reiterate, the lodestar amount is arrived at by multiplying the number of hours reasonably expended on the case by the appropriate hourly rate. Thus, before applying any of the afore-listed factors the court must come up with the number of hours reasonably expended by the plaintiffs' counsel in prosecuting the plaintiffs' claim. That can be a challenging task. After all, hindsight is 20-20, and actions taken that appear in the rearview mirror to be unreasonable might have seemed quite reasonable at the time they were actually taken.

I note that the steps required to arrive at the lodestar amount seem to overlap somewhat with the above factors. More specifically, arriving at the lodestar amount requires a court to multiply the number of hours reasonably expended on the case by the appropriate hourly rate for counsel. Yet, the first of the above factors allows the court to take into account the time and labor required in considering whether to reduce the amount sought. "The trial judge should weigh the hours claimed

4

against his own knowledge, experience, and expertise of the time required to complete similar activities." *Johnson*, 488 F.2d at 717. That having been said, I have reviewed the time sheets submitted by the plaintiffs. From that mere review I cannot say state definitively how much, if any, of the time expended on this case by the plaintiffs' legal representatives was per se unreasonably expended. Thus, I will find the lodestar amount to be that which the plaintiffs' are seeking, to wit, $24,307.00. That does not mean, however, that the plaintiffs are entitled to that amount of attorneys' fees. To the contrary, and as noted, the court may consider the factors set forth above in deciding whether to reduce those fees.

The time sheets reveal that three attorneys worked on this file, and that some of their time was spent meeting with one another to discuss the file and reviewing one another's written work product. To be sure, there is nothing necessarily wrong with lawyers consulting with one another and reviewing one another's written work product. At the same time, however, lawyers need to be continually sensitive to the nature of the case, the amount of money that may be involved, as well as the case's novelty and complexity, so that an inordinate amount of time is not spent on the case. After all, not every case is a $100,000.00 case. And indeed, the Udanis' damages were known at the outset to be, at most, approximately $30,000.00. (*See* Pls.' Br., Ex. 2, attachment 2 (letter from Pls. to Benny's dated Jan. 3, 2005).)

Ultimately, the plaintiffs agreed to accept the sum of $6,500.00 in damages. This is considerably less than the $30,000.00 they sought from Benny's in the January 3, 2005, letter. Indeed, while the plaintiffs prevailed on their claim, they ultimately received only 20% (approximately) of what they claimed their actual damages were. On the other hand (and to be fair to the plaintiffs' attorneys), the Udanis and their lawyers were dealing with a rather tricky area of the

5

Case 2:05-cv-00360-WEC   Filed 06/28/06   Page 5 of 8   Document 70

law, which (as they have learned) can fairly be described as not necessarily consumer-friendly.

Another matter bears some comment. The defendants argue that the plaintiffs' claim for attorneys' fees should be reduced by any fees incurred after October 18, 2005. This is the date on which the defendants agreed to stipulate that Benny's was liable to the plaintiffs for $6,500.00 in actual damages.

> Plaintiffs' attorneys' time records show that after October 18, 2005 [plaintiffs' attorneys] spent a total of 26.85 hours working on this case for which they now seek payment of $6,169.75. Since the issue of Benny's liability and actual damages had already been agreed upon as of October 18, 2005, this means that Plaintiffs and their counsel spent almost as much time and money for additional legal fees as Benny's had agreed to pay in actual damages.

(Defs.' Br. at 14 (citation omitted).) In reply, the plaintiffs argue that they are nevertheless entitled to the attorneys' fees incurred after October 18, 2005 because during that period of time they were trying to obtain Benny's tariff (if one existed) from the defendants' attorney. According to the plaintiffs, if Benny's did not have a tariff on file for public review, "the difference in potential liability for the Defendants is huge." (Pls' Reply at 5.)

> Under federal law, failure to have a valid tariff on file for public review would mean that Defendants' liability would not be limited by the terms of their bill of lading. Instead, the Udanis would be in a position to recover their full amount of damages.
>
> This issue, therefore required thorough research and additional legal analysis by Plaintiffs' counsel. Although the Udanis ultimately chose not to pursue the tariff matter at trial, framing the legal issue and evaluating the extent of the Defendants' exposure was a necessary exercise and allowed the Udanis to make an informed decision regarding the settlement of the litigation.

(Pls.' Reply at 5 (citation omitted).) In my opinion, the plaintiffs should not be awarded all of their attorneys' fees for engaging in such "exercise." After all, it was the plaintiffs themselves who offered to settle for the amount of $6,500.00 in their counsel's October 12, 2005 letter to defendants'

6

counsel. And, although their offer to do so was conditioned on their being provided with a copy of Benny's tariff, the bottom line is that they ultimately agreed to accept the $6,500.00, apparently without ever having their tariff-related questions fully answered by the defendants. Given the foregoing, I believe that the amount of attorneys' fees attributable to the "thorough research and additional legal analysis" performed after October 18, 2005, should be reduced by $5,000.00. Reducing the $24,307.00 lodestar amount by $5,000.00 brings it to $19,307.00.

Furthermore, bearing in mind that the plaintiffs recovered only 20% of their claimed total damages, I believe that a further reduction in their attorneys' fees claim would be fair and appropriate. Thus, an additional $3,000.00 will be deducted from the $19,307.00, resulting in $16,307.00.

In conclusion, the plaintiffs' motion for summary judgment as to reasonable attorneys' fees will be granted in part and denied in part. The plaintiffs will be awarded $16,307.00 in attorneys' fees and $829.41 in costs, for a total award of $17,136.41. In addition, and based on the parties' stipulation, the plaintiffs will be awarded $6,500.00 in damages.

**NOW THEREFORE IT IS ORDERED** that the plaintiffs' motion for summary judgment as to reasonable attorneys' fees be and hereby is **GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER ORDERED** that the plaintiffs be and hereby awarded $6,500.00 in damages from the defendants;

**IT IS FURTHER ORDERED** that the plaintiffs be awarded $16,307.00 in attorneys' fees and $829.41 in costs;

**IT IS FURTHER ORDERED** that judgment shall be entered in favor of the plaintiffs and against the defendants in the total amount of $23,636.41;

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

**SO ORDERED** this <u>28th</u> day of June 2006, at Milwaukee, Wisconsin.


                              <u>/s/ William E. Callahan, Jr.</u>
                              WILLIAM E. CALLAHAN, JR.
                              United States Magistrate Judge